The STATE of Ohio, Appellee,

v.

MACKIE, Appellant.

[Cite as *State v. Mackie* (1998), 128 Ohio App.3d 167.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–961145.

Decided March 27, 1998.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *L. Susan Laker,* Assistant Prosecuting Attorney, for appellee.

*Kelly L. Farrish* and *Craig L. Farrish,* for appellant.

---

DOAN, Judge.

Defendant-appellant Donald R. Mackie was charged with operating a motor vehicle under the influence of alcohol pursuant to R.C. 4511.19(A)(1) and operating a motor vehicle with a prohibited breath content pursuant to R.C. 4511.19(A)(3). The case was tried without a jury in the Hamilton County Municipal Court.

The evidence showed that in the early morning hours of January 14, 1996, Thomas Sawyer, a homeowner on Reemelin Road, went out to investigate some noises. He saw that a car had slid off the road, hit two mailboxes, and landed in a snow bank. It had come to rest on a decorative telephone pole that was lying on the ground. He saw another car attached to the wrecked car by a cable, apparently trying to tow it. He saw an individual, whom he later identified as Mackie, in the car that appeared to be stuck, sitting in the driver's seat. The car's engine was running, although it did not move. After a brief conversation with Mackie, Sawyer called the police.

Police Officer Herb West of the Hamilton County Sheriff's Department responded to the scene at approximately 5:00 a.m. Mackie was not in the car and it was not running when he arrived. Because of Mackie's physical appearance, the strong odor of alcohol on his person, and his admission that he had been drinking, West gave him field sobriety tests. Because of Mackie's poor performance on those tests, West arrested him. Mackie ultimately submitted to a breath analysis that showed his breath-alcohol concentration was .197 hundredths of one gram by weight of alcohol per two hundred and ten liters of breath.

Mackie testified that the accident occurred between the hours of 1:00 and 2:00 a.m., when he lost control of his car due to a patch of ice on the road. He stated that he had been working and that he had consumed only a minimal amount of alcohol before the accident. Because of the lateness of the hour, he had left his car and walked home. He was concerned about retrieving some expensive sound equipment in his car and called several friends for assistance, but he was not successful in obtaining help. During this time, he consumed several alcoholic beverages.

Eventually, his girlfriend, Suzette Bailey, agreed to help. Between 4:00 and 5:00 a.m., she drove him back to the scene, and he began transferring the

equipment to her car. At her urging, they also tried to dislodge Mackie's car. Ultimately, though, a tow truck was needed to remove his vehicle.

After hearing the evidence, the trial court thoroughly analyzed the issue of whether Mackie's vehicle was operational. It held that even though Mackie's car was immobile, he "was in a position of control of his vehicle and was, beyond a reasonable doubt, operating it in an attempt to return it to the roadway." Consequently, the court found Mackie guilty of violating both R.C. 4511.19(A)(1) and (A)(3). It sentenced him for only one violation, however, although it never specified which offense. This appeal followed.

Mackie presents two assignments of error for review. In his first assignment of error, he states that the trial court erred as a matter of law in finding that he operated his vehicle while under the influence of alcohol. He argues that he could not have operated the vehicle, since *it was incapable of movement*. We find this assignment of error to be well taken.

The Ohio Supreme Court first discussed the meaning of the word "operate" as used in R.C. 4511.19 in *State v. Cleary* (1986), 22 Ohio St.3d 198, 22 OBR 351, 490 N.E.2d 574. In that case, a police officer found the intoxicated defendant in the driver's seat, asleep behind the wheel, with the engine running. The court held that the defendant was "operating" the motor vehicle within the meaning of the statute. It stated:

"Operation of a motor vehicle within the contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat with the ignition key in his possession indicating either his *actual or potential movement of the vehicle* while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1)." (Emphasis added.) *Id.* at 199, 22 OBR at 352, 490 N.E.2d at 575.

The court rejected the defendant's argument that the legislative purpose of R.C. 4511.19 is to protect users of the highways from drunken drivers, and that since he was not driving, he did not violate the statute. It stated:

"It clearly was not the intent of the legislature to encourage intoxicated persons with impaired faculties and very questionable judgment, and with *the capability of putting the vehicle in motion*, to climb behind the wheel and be in a position to put the motor vehicle in motion." (Emphasis added.) *Id.* at 200, 22 OBR at 353, 490 N.E.2d at 576.

The court next addressed the issue in *State v. McGlone* (1991), 59 Ohio St.3d 122, 570 N.E.2d 1115. In that case, the defendant was found in a private driveway, intoxicated and asleep at the wheel of his car with the motor running. The court held that an intoxicated person who is in the driver's seat of a motor vehicle parked on private or public property, with the key in the ignition, is operating the vehicle in violation of R.C. 4511.19(A)(1). *Id.* at syllabus. In so

holding, the court pointed out that the car was under the defendant's control, that he could have moved the car whenever he wanted, and that he admitted he had been driving it. *Id.* at. 123, 570 N.E.2d at 1117. In rejecting the defendant's argument that he was prudent because he drove off the public highway into the driveway of a private residence and fell asleep, the court stated:

"R.C. 4511.19 is not only directed to those who drive on public streets. It prohibits the operation of a motor vehicle anywhere in the state while the driver is under the influence of drugs or alcohol. We agree with the dissent's observation in the court of appeals that: 'If you are under the influence [of alcohol or drugs], don't drive or put yourself in a position of control of a vehicle. If you do, you pay the penalty.' Had McGlone struck a car or a person in the driveway as a result of his intoxication, his conduct would have been no less reprehensible than if he had struck a person or another vehicle on the highway." *Id.* at 124, 570 N.E.2d at 1117.

*State v. Gill* (1994), 70 Ohio St.3d 150, 637 N.E.2d 897, is the Supreme Court's latest pronouncement on the topic. In that case, it held that a person who is in the driver's seat of a motor vehicle with the key in the ignition is operating the vehicle within the meaning of R.C. 4511.19, regardless of whether the motor is running. *Id.* at syllabus. As in its previous cases, the court focused on the possibility of harm:

"A clear purpose of R.C. 4511.19 is to discourage persons from putting themselves in the position in which they can potentially cause the movement of a motor vehicle while intoxicated or under the influence of any drug of abuse. * * * Prohibition of potentially harmful conduct need not await the occurrence of the act." *Id.* at 154, 637 N.E.2d at 900.

■ The appellate court cases on the topic of "operation" tend to be fact-specific. We find none directly on point with this case's unique fact pattern. Nevertheless, "[a] common thread is the conduct or activity of the defendant as it relates to his or her ability to cause 'actual or potential movement' of a motor vehicle while under the influence of alcohol." *State v. Shrader* (1997), 118 Ohio App.3d 221, 224, 692 N.E.2d 628, 631.

A few cases have addressed the issue of whether a defendant can operate a vehicle incapable of movement. Some courts have held that although the prosecution need not prove that the vehicle was operable to obtain a conviction, inoperability may be raised as a defense on which the defendant bears the burden of proof. *State v. Gengler* (Aug. 13, 1993), Portage App. No. 92–P–0107, unreported, 1993 WL 332450; *State v. Allberry* (Jan. 31, 1991), Hocking App. No. 90CA09, unreported, 1991 WL 13736; *State v. McCain* (Dec. 4, 1990), Gallia App. No. 89CA22, unreported, 1990 WL 193525. See, also, *Toledo v. Voyles* (1984), 14 Ohio App.3d 419, 14 OBR 538, 471 N.E.2d 823.

The Fourth District Court of Appeals has discussed the issue thoroughly. It stated that "it is enough to establish operability if the vehicle is reasonably capable of being made operable by the driver or others with him. Whether or not a vehicle was operable is a question for the trier of facts." *Allberry, supra; McCain, supra.* In so holding, the court relied on a Florida case:

" 'It readily appears that a person ought not be convicted of having a vehicle under his or her control while intoxicated when in fact the vehicle was inoperable, the intoxicated person did not operate the vehicle prior to its becoming disabled, and the vehicle's mechanical problems were such that it could not under any reasonable circumstances have been operated by the person accused.' " *Allberry, supra,* quoting *Jones v. Florida* (Fla.App.1987), 510 So.2d 1147, 1149.

It also relied on a Washington case:

" 'The "reasonably capable of being rendered operable" standard employed by the trial court here distinguishes a car that runs out of gas on a major freeway near several exits and gas stations from a car with a cracked block which renders it "totally inoperable." The difficulty in attempting to formulate a unitary standard of operability arises from the necessity of setting out the degree of inoperability which will preclude prosecution under RCW 46.61.504. The focus should not be narrowly upon the mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability, it can no longer move. Where, as here, circumstantial evidence permits a legitimate inference that the car was where it was and was performing as it was because of the defendant's choice, it follows that the defendant was in actual physical control. To hold otherwise could conceivably allow an intoxicated driver whose vehicle was rendered inoperable in a collision to escape prosecution.' " *Id.,* quoting *State v. Smelter* (1984), 36 Wash.App. 439, 444–445, 674 P.2d 690, 693.

Consequently, in *McCain,* the court held that a defendant found behind the wheel with the key in the ignition of a car that had stopped due to being overheated because of a radiator leak was properly convicted of violating R.C. 4511.19. The court concluded that the vehicle was reasonably capable of being operated because water was available to fill the radiator and it was conceivable that the car could have been driven without water even though damage to the engine would occur. In *Allberry,* police found the defendant behind the wheel of a truck, with the engine running, off the side of the road. His passenger, a mechanic, claimed that the truck would not start and he was attempting repairs. The court held the defendant could be found guilty of violating R.C. 4511.19 because he had failed to meet his burden to show inoperability. The facts did not show that, at the time the police officer initially observed the defendant, the truck

would not start. Further, the trial court could have considered the truck sufficiently operable in that it was driven to the place where the defendant was initially observed. See, also, *State v. Kincaid* (1992), 83 Ohio App.3d 341, 614 N.E.2d 1112; *State v. Feltner* (Aug. 19, 1994), Huron App. No. H–93–59, unreported, 1994 WL 455670; *Gengler, supra*; *N. Olmsted v. Patton* (Apr. 18, 1985), Cuyahoga App. No. 48946, unreported, 1985 WL 7970.

In contrast, in *Columbus v. Seabolt* (1992), 79 Ohio App.3d 234, 607 N.E.2d 61, the court held that there was insufficient evidence to convict the defendant of operating a motor vehicle under the influence of alcohol under the Columbus City Code, which defined an "operator" as "every person who drives or is in actual physical control of a vehicle." *Id.* at 237, 607 N.E.2d at 62. In that case, a police officer found the defendant sitting behind the wheel of a truck with the key in the ignition and the motor running. The truck was totally immobile, stuck in the mud, with two tires blown out. The court stated that the evidence was insufficient to prove beyond a reasonable doubt that the defendant drove the vehicle to its place of immobility while under the influence of alcohol. Further, even though the defendant was found intoxicated behind the wheel with the key in the ignition, she could not move the truck so as to cause a hazard to another person on the highway. Consequently, she had no actual physical control of the vehicle as required by the Columbus City Code. *Id.* at 237–238, 607 N.E.2d at 62–63.

Similarly, in *State v. Degler* (Feb. 21, 1990), Wayne App. No. 2491, unreported, 1990 WL 15200, a police officer found the defendant behind the steering wheel of an automobile that was stuck on railroad tracks. Several witnesses testified that the car had no potential for movement. The court held that the trial court erred in instructing the jury that "it is not necessary that the vehicle be capable of motion so long as you have found that the defendant was in the driver's seat with the engine running * * *." It concluded that the effect of the erroneous charge was that even if the jury believed the defendant's evidence that he did not drive the vehicle onto the tracks and even if the jury found that the vehicle was not capable of movement when the defendant got behind the steering wheel, it was still bound to find him guilty. The court also held that the error could not be harmless because it "struck down defendant's legitimate defense."

In *State v. McKivigan* (Jan. 27, 1989), Portage App. No. 1905, unreported, 1989 WL 6111, a police officer observed a car on the berm of the highway with its flashers blinking. He found the intoxicated defendant sitting in the driver's seat but did not see the keys in the ignition. The defendant told the officer that he had run out of gas. The court held that the state did not prove that the defendant was operating the vehicle while under the influence of alcohol. It concluded that the state presented evidence of operation and evidence that the defendant was under the influence of alcohol, but nothing in the record indicated that the two were contemporaneous. "[T]he state produced some circumstantial

evidence of operation sometime earlier in the evening, but nothing which corrolates intoxication with that operation." See, also, *State v. Traina* (Mar. 6, 1995), Mahoning App. No. 94 C.A. 52, unreported 1995 WL 106096.

■ We find the Fourth Appellate District's reasoning to be persuasive, and we hold that inoperability is a defense upon which the defendant bears the burden of proof. In this case, the state presented insufficient circumstantial evidence to support the inference that Mackie was operating the vehicle while intoxicated immediately prior to its becoming immobile. To the contrary, the unrefuted evidence, which the trial court accepted, was that the accident that immobilized the vehicle occurred several hours earlier when Mackie was not intoxicated. Further, the unrefuted evidence showed that when Mackie was intoxicated, his car was completely immobile and had no potential for movement. There was no evidence showing that it could be rocked or moved, even slightly. Compare *State v. Webb* (June 30, 1994), Portage App. No. 93–P–0045, unreported, 1994 WL 321224; *State v. Davidson* (Nov. 18, 1987), Hamilton App. Nos. C–860858 and C–860859, unreported[1]; and *State v. Reynolds* (July 1, 1985), Ross App. No. 1128, unreported, 1985 WL 9376. Consequently, Mackie did not have control of the vehicle, and he could not have used it to create a hazard to other persons or vehicles on the highway.

We hold that with the evidence viewed in a light most favorable to the prosecution, there was no evidence from which the trier of fact could have found that Mackie "operated" the vehicle while under the influence of alcohol. Therefore, the evidence was insufficient to support the conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Accordingly, we sustain Mackie's first assignment of error. His second assignment of error, in which he claims that the term "operate" as used in R.C. 4511.19 is unconstitutionally vague and overbroad, is moot. See App.R. 12(A)(1)(c). We therefore decline to address it.

The judgment of the municipal court is reversed, and Mackie is discharged from further prosecution.

*Judgment reversed*
*and appellant discharged.*

PAINTER, P.J., and SUNDERMANN, J., concur.

---

1. We cite this court's decision in *Davidson* because the parties cite it and the trial court relied upon it. We find it to be factually distinguishable. Additionally, it is a memorandum decision that has no binding precedential value. S.Ct.R.Rep.Op. 2(C) and 2(G)(1); *State ex rel. Parker v. Indus. Comm.* (May 16, 1996), Franklin App. No. 95APD07–889, unreported, 1996 WL 257458; *State v. Sadiq* (July 14, 1983), Franklin App. No. 83AP–06, unreported, 1983 WL 3614.