OPINION
Michelle Robinson is appealing from her conviction and sentencing for driving under the influence in violation of R.C. 4511.19(A)(6) by the Municipal Court of Vandalia, Ohio. She initially filed a motion to suppress any statements made by her at the scene, the result of an HGN test, and the results of the breathalyzer test. A hearing was held before a magistrate on this motion. The magistrate did suppress the HGN test result, but overruled the motion on the defendant's statements issue and the results of the breathalyzer test. We first note that none of these three issues are before this court on appeal. The only issue before this court is the one raised by the appellant in her sole assignment of error, to-wit:
 THERE WAS INSUFFICIENT EVIDENCE TO CONVICT THE DEFENDANT FOR A VIOLATION OF O.R.C. 4511.19(A)(6) BECAUSE THERE WAS NO EVIDENCE OF A TEMPORAL NEXUS OR CORRELATION BETWEEN THE OPERATION OF THE VEHICLE AND INTOXICATION.
While this issue, the subject of the assignment of error, was not raised by counsel for defendant in the motion to suppress, it was, in fact, raised verbally to the trial court at the conclusion of the hearing before the trial court (not before the magistrate) held subsequently to the magistrate's hearing. (1/18/01 Hearing, Tr. 22-24). Thus, it was preserved in the record and is properly before us.
The facts regarding the issue raised by the assignment of error are ably set forth in the magistrate's decision, as follows:
 This matter came on for hearing on Defendant's Motion to Suppress. Based on the testimony presented, the exhibits admitted into evidence and the credibility of the witnesses, the operative facts and applicable law are found to be as follows. On September 28, 2000 at approximately 3:15 p.m., Deputy Tom Combs and Deputy Zern, both of the Montgomery County Sheriff's Department, were dispatched to a location on Riverside Drive within this Court's jurisdiction, on the report that a vehicle had gone off the road. Upon arrival, Deputy Combs found the Defendant in a vehicle that was pulled into a parking space in an apartment parking lot. The vehicle bore damage to its front end and windshield. Both front airbags had deployed inside the vehicle. He also observed tire marks indicating where the vehicle has [sic] gone off the road and a parking sign that had been leveled to the ground when run over.
 Deputy Combs spoke with the Defendant, asking for her driver's license and proof of insurance. Although she complained of no injuries to the Deputy, she did not immediately respond to his request and he had to repeat it three to four times before she attempted to comply. There were no visible injuries to the Defendant and she refused any medical treatment. During this initial conversation, the Deputy, who found the Defendant to act confused, and sleepy, detected a moderate odor of an alcoholic beverage about her person, and observed her eyes to be glassy and her speech slurred. Throughout this interlude Defendant stated that she did not know what she had hit and that she had to go pick up her child at childcare. Wishing to have a Horizontal Gaze Nystagmus (HGN) test performed on the Defendant, and not being certified in such testing, Deputy Combs called for backup: someone certified to administer the HGN. Pursuant to that call, Deputy Rodney Ables arrived at the scene. He proceeded to explain, and then conduct, the HGN with Defendant displaying all six clues.
 Deputy Ables also observed that the Defendant had a "moderate" odor of an alcoholic beverage about her person, had slurred speech, and eyes that appeared glassy and bloodshot. When inquiry was made as to if the Defendant had been drinking, she replied: "a couple." Deputy Ables attempted to conduct additional field sobriety tests but found the Defendant had difficulty understanding the instructions. Additionally, the Defendant was staggering so badly that Deputy Ables had to catch her to keep her from falling. Hence, no further effort was made to conduct the tests. With the opinion that Defendant was under the influence of alcohol and/or drugs, Deputy Ables so advised Deputy Combs, who then placed the Defendant under arrest for DUI. No Miranda rights were given to Defendant.
The defendant did raise the issue of whether the arresting officers had probable cause to make a DUI arrest under these circumstances, and the magistrate found that they did, stating as follows in her decision:
 Defendant contends that the officers lacked probable cause for the DUI arrest. Probable cause exists when the facts and circumstances within the arresting officer's knowledge at the time of the arrest, are sufficient to warrant a prudent person to believe that an offense has been committed by the person to be arrested. Beck v. Ohio (1964) 379 U.S. 89. Traditionally, Ohio courts look to the totality of the circumstances to make this determination. State v. McCraig (1988) 51 Ohio App.3d 94. Not only indicia of intoxication, but also evidence of impaired motor coordination is required to satisfy the probable cause requirement for a DUI arrest. Probable cause has been found where a Defendant is involved in an unobserved single-car accident, admits to having consumed alcohol, and displays physical indicia of intoxication. State v. Conover (1985) 23 Ohio App.3d 161; Westlake v. Vilfoy (1983) 11 Ohio App.3d 26.
 Clearly, in the case sub judice, the officers did not observe any driving by the Defendant. However, Defendant was involved in a one-car accident, driving off the roadway for no apparent reason. She not only displayed the physical indicia of intoxication, but also staggered to such a degree that Deputy Ables had to catch her to keep her from falling. The Court finds these facts are sufficient to establish probable cause for Defendant's DUI arrest.
The defendant argues that since the car was inoperable when the defendant was found in it, she could not be arrested for being in control of the motor vehicle while under the influence of alcohol, citing Statev. McKivigan (Jan. 27, 1989), Portage App. No. 1905, unreported; Statev. Traina (Mar. 6, 1995), Mahoning App. No. 94 CA 52, unreported; Statev. Mackie (1998), 128 Ohio App.3d 167; State v. Cleary (1986),22 Ohio St.3d 198; City of Columbus v. Seabolt (1992), 79 Ohio App.3d 234. The State's counsel does not provide any help to this court when he states in his brief that "the cases cited by the Appellant in support of its legal arguments in its brief can be distinguished upon the facts present in this case." Appellee's brief, 8. He has provided no reasons why the cases can be distinguished.
We have examined these cases and, yes, we find they are all distinguishable and in certain matters even provide support for the State's position on the issue. In McGiven, there was no accident and no evidence that the defendant there was intoxicated when he ran out of gas on the highway. There was a long period of time between the actual driving by the defendant and the time he was found seated by the wheel of his car without keys and in an apparent state of intoxication. The court properly reversed the defendant's conviction in Mackey, but, in fact, it did find that the troopers there had probable cause to arrest.
In Traina, the defendant was found walking his motorcycle along the berm of the highway in an apparent state of intoxication. The stipulation of facts in that case revealed that there was no evidence as to when the defendant's motorcycle ran out of gas or how much time had passed since he began walking the motorcycle along the highway. Thus, the State was unable to prove he had been operating while under the influence, and the conviction was properly reversed.
In Mackie, there was likewise no evidence of intoxication before the occurrence of an accident when the appellant testified that he lost control of his car on a patch of ice on the road and hit two mailboxes while sliding off the road into a snowbank. The court noted that there was unrefuted evidence "that the accident that immobilized the vehicle occurred several hours earlier when Mackie was not intoxicated. Further, the unrefuted evidence showed that when Mackie was intoxicated, his car was clearly completely immobile and had no potential for movement." Decision, 6.
In Cleary, the sole issue was whether the defendant could be found guilty of operating a motor vehicle when he was asleep in it in the driver's seat while the car was running with the emergency brake engaged. The Supreme Court there distinguished between "driving" and "operating," finding that the latter "encompasses a broader category of activities involving motor vehicles than does `driving.'" Id., 199. The court there also dealt with the argument by the defendant that the legislative purpose of the statute is to protect the users of highways and streets from drunken drivers and, therefore, since the defendant was not driving, he did not violate the statute. The court noted "this is too narrow a reading of the intent of the statute. Under such an interpretation, regardless of the carnage and havoc caused by a drunken driver of a motor vehicle, without eye witness testimony of his actual driving he would only face a possible intoxication charge." Id., 201.
In Seabolt, there was no accident, and there was no evidence that the defendant was under the influence while actually operating the vehicle, and the only evidence is that the defendant there was intoxicated while seated in the driver's seat of an immobile vehicle. The Tenth District Court of Appeals there properly found the defendant not guilty of driving while intoxicated and reversed the defendant's conviction. The court inSeabolt did state that "while a mere running of an engine of a totally immobile vehicle is not operation within the physical control part of the section, there still may be conviction of driving while under the influence of alcohol if there is sufficient direct or circumstantial evidence that defendant, while under the influence of alcohol, drove the automobile into the place where it became immobile." Id., 4.
The evidence in the case before us clearly shows that the defendant was found very shortly after the accident in a state of intoxication and in control of the immobilized vehicle. In fact, the defendant here actually admitted that she was operating the vehicle when she had the accident and did not even know or remember what she had hit. This telling admission is not found in any of the cases cited by the appellant. This case is similar to a case dealt with by the Supreme Court of Ohio in Oregon v.Szakovits (1972), 32 Ohio St.2d 271, 61 O.O.2d 496, where the appellant admitted that he had been driving when the accident occurred. The court there quoted from its decision in Mentor v. Giordano (1967),9 Ohio St.2d 140, 38 O.O.2d 366 stating "chronology is an important element in `drunken driving' cases. A relationship must be established between the time there was evidence to show the influence of intoxication at the time of operating a vehicle . . . generally, each `drunken driving' case is to be decided on its own particular and peculiar facts . . ." Id., 273, 497.
In Conover, cited by the magistrate in her decision, the defendant was involved in a single car accident, and the officers shortly after the accident found defendant in control of the vehicle in an apparent state of intoxication. Defendant admitted he had been driving a vehicle and told them he had consumed two alcoholic drinks. Id. Compare those facts with the facts in the case before us where the defendant admitted to driving the vehicle, admitted to having an accident by hitting something, and admitted to drinking "a couple" of drinks before the accident.
In State v. Finch (1985), 24 Ohio App.3d 38, cited by the State in its brief, the court noted the Supreme Court decision in Szakovits, supra, that it was not necessary for an arresting officer to actually witness "bad driving" in order to effect an arrest for driving under the influence of alcohol, which is a first degree misdemeanor, R.C.4511.99(A), when the officer arrived shortly after an automobile accident, and the defendant appeared intoxicated and admitted operating the vehicle. Id., 40.
Under all the facts and circumstances of this case, we find that there was more than enough evidence to implicate the defendant's state of intoxication at the time of the accident, and that she was driving the vehicle at that time. We do not find any error on the part of the trial court in finding the defendant guilty, nor that the decision was arbitrary or capricious, contrary to law, or against the manifest weight of the evidence. There was a very sufficient amount of evidence of a temporal nexus or correlation between the operation of the vehicle and the intoxication of the defendant. The judgment is affirmed.
BROGAN, J. and GRADY, J., concur.