[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Following a bench trial, the trial court convicted appellant Paul Schuler of operating his truck while under the influence of alcohol[1]
and with a high-tier prohibited level of blood alcohol concentration.[2]
In his appeal, Schuler raises three assignments of error: His first assignment challenges the trial court's denial of his motion to suppress. In his second assignment, Schuler claims that he could not have been "operating" his truck under R.C. 4511.19 because it did not have a battery. In Schuler's third assignment, he challenges the weight of the evidence supporting his conviction because he claims that he had demonstrated that his truck was inoperable.
In his motion to suppress, Schuler argued that Springdale Police Officer Lynn McKee lacked the requisite reasonable, articulable suspicion to stop him. McKee and a training partner received a dispatch that an after-hours domestic dispute was occurring on the parking lot of Tire Discounters. Responding to the scene, they saw two men sitting in a stationary pickup truck that was parked away from vehicles waiting to be serviced. As the officers approached the truck, Schuler, who was in the driver's seat, started to leave the truck. McKee's partner told Schuler to "get back in."
When the officers reached the truck, McKee asked the passengers if they needed assistance and questioned what was "going on." The officers were told that the truck had run out of gas. When McKee opened the door of the truck, he smelled a strong odor of alcohol in the cab and noticed that Schuler had red eyes and slurred speech. McKee asked Schuler to step out of the truck to perform field sobriety tests. Schuler failed the tests. Schuler denied that he had been driving, but stated that he had had three beers since 2:30 p.m. (The officers arrived at the parking lot shortly before 8:30 p.m.) He also told McKee that he had last eaten at 10:30 a.m., and that he had not ingested any medication or illegal substances. McKee arrested Schuler, escorted him to the police station and, at approximately 9:20 p.m., administered an intoxilyzer test that indicated a blood alcohol concentration of .345.
The trial court concluded that the order for Schuler to return to the truck constituted a warrantless seizure. It also determined that, under the totality of the circumstances the seizure was not a violation of Shuler's Fourth Amendment rights.
Whether a seizure has occurred is ordinarily a question of fact.[3]
Because the trial court can best determine credibility and resolve factual disputes, we must defer to the trial court's factual determinations if they are supported by competent, credible evidence.[4]
A seizure does not occur where a police officer approaches a parked vehicle and questions its occupants.[5] But this case did not involve a mere approach because McKee's partner intervened too quickly. Thus, the query is whether the request or order for Schuler to get back in the truck was such a showing of force or authority that a reasonable person would have believed that he or she was not free to leave.[6] If so, Schuler was "seized."
We conclude that, while not overwhelming, there was competent, credible evidence to support the trial court's factual finding. The officers were approaching the truck. Schuler was apparently leaving the truck to engage in a consensual encounter with the officers. Before that occurred, he was stopped by a show of authority and responded by obeying. This court has determined that ordering a defendant to leave his car can constitute a seizure.[7] Similarly, we believe that an order to return to a vehicle can also constitute a seizure.
We must next determine whether, under the totality of the circumstances, the seizure was lawful. To justify a warrantless investigative seizure, a police officer must have a reasonable, articulable suspicion that criminal activity has occurred or is occurring.[8] In this instance, the officers had received a dispatch that a domestic disturbance or possible assault was occurring after hours on the parking lot. They arrived within five minutes of the dispatch and observed two males in a parked truck. A man began to exit from the driver's side. At that point, the officers had a reasonable, articulable suspicion to detain McKee for further investigation regarding the dispatch call. The indicia of intoxication provided grounds for further detention. We overrule McKee's first assignment.
McKee's second and third assignments concern McKee's evidence that his truck was without a battery four months after it had been towed from the parking lot. He claims that because the truck had no battery when he went to retrieve it from the place where it had been towed, the state failed to prove that he had "operated" his truck while under the influence of alcohol, and that because he had proved the defense of inoperability, his conviction was against the weight of the evidence.
The officers approached the truck and observed McKee sitting on the driver's side with the key in the ignition. Either Schuler or his passenger informed McKee that the truck had run out of gas. Schuler denied that he had been driving, and the arresting officer did not see the truck being operated. According to an employee, the truck was not on the parking lot approximately an hour before Schuler's contact with the police officers.
Joshua Baker towed Schuler's truck at approximately 1:00 a.m. He testified that he had neither ascertained whether the truck would start nor looked under the truck's hood before he towed it. Baker stated that he turned the key in the ignition, put the truck in neutral, and towed it to Springdale Automotive. To his knowledge the truck had not been moved nor had its hood been opened during the time it sat at Springdale Automotive. When McKee picked up the truck, it was missing its battery. Baker also testified that a car could be started without a battery by using a battery-charged booster box.
Dr. Robert Powers, the chief toxicologist for the Hamilton County Coroner, testified that if a 150-pound man began drinking at 7:30 p.m. and quit drinking at 8:30 p.m., and if the man had not eaten since 10:30 a.m. and had not drunk any alcohol before 7:30 p.m., he would have to consume 14 alcoholic drinks to obtain a blood alcohol concentration of .345 at 9:20 p.m. If the man started out with a blood alcohol concentration .170 at 7:30 p.m., he would have to drink 8 to 10 drinks to reach at blood alcohol concentration of .345 by 9:30 p.m.
On cross-examination, Dr. Powers admitted that it would take fewer drinks to reach a blood alcohol concentration of .345 in an hour's time if the alcohol were of a higher proof than that of beer, wine, and most other alcohol.
To establish that Schuler was "operating" his truck within the meaning of R.C. 4511.19, the state had to demonstrate that he was in the driver's seat of the truck with the ignition key in the ignition, and that he had a prohibited concentration of alcohol in his body.[9] The state sufficiently demonstrated this. Inoperability is certainly a defense, but it is an affirmative defense. The trial court found that Schuler had not proved inoperability, and we cannot say that that finding was erroneous. Thus, we overrule Schuler's second assignment.
In his third assignment, Schuler claims that his conviction was against the weight of the evidence. In reviewing this challenge, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact lost its way and created a manifest miscarriage of justice.[10]
Whether the truck was operable or incapable of movement was an affirmative defense that had to be proved by a preponderance of the evidence.[11] The determination of operability was a question of fact.[12] Schuler claims that because his truck was without a battery, he could not have caused actual or potential movement of the truck. At the time of his arrest, either Schuler or his passenger told McKee that the truck had run out of gas. At trial, Schuler claimed that the truck was missing its battery. He based this claim on the facts that, at the time he had picked up his truck from storage, the battery was missing, that no one had determined if the truck could be started the night of his arrest, and that he had called his daughter's friend earlier that evening to pick him up at Tire Discounters. When she arrived, he was not there.
The evidence in the record shows that Schuler was found intoxicated, on the driver's side of his truck, with the key in the ignition. Schuler's truck was parked on the Tire Discounters parking lot, where it had not been approximately one hour previously. Schuler would have had to consume 14 drinks in the hour that the truck sat on the parking lot before the police arrived, if he had not been under the influence before he drove to the lot. Further, the truck was capable of being started without a battery. There was a reasonable inference that the truck was operable, that Schuler drove the truck to the parking lot, and that he was under the influence of alcohol when he did so. Therefore, we overrule Schuler's third assignment.
The judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Painter, P.J., Doan and Sundermann, JJ.
[1] See 4511.19(A)(1).
[2] See 4511.19(A)(6).
[3] See State v. Fisher (June 5, 1998), 1st Dist. No. C-970523.
[4] See State v. Eberhart, 1st Dist. No. C-010346, 2002-Ohio-1140.
[5] See State v. Boys (1998), 128 Ohio App.3d 640, 642-643,716 N.E.2d 273.
[6] See id. at 642.
[7] See State v. Boys, supra; State v. Arbogast, (Dec. 29, 1995), 1st Dist. Nos. C-950315 and C-950316. But, see, State v. Lunce (May 21, 2001), 12th Dist. No. CA2000-10-209.
[8] See Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868.
[9] See State v. Gill, 70 Ohio St.3d 150, 1994-Ohio-403, 637 N.E.2d 897, syllabus.
[10] See State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[11] See State v. Mackie (1998), 128 Ohio App.3d 167,714 N.E.2d 405.
[12] See id.