OPINION
{¶ 1} Appellant Joshua Michael Maurer appeals his conviction in the Canton Municipal Court for driving while intoxicated. The relevant facts leading to this appeal are as follows.
 {¶ 2} On April 27, 2002, at approximately 3:40 AM, Stark County Sheriff Deputy Richard Gurlea discovered a 2000 Mercury Cougar sitting partially off the roadway on Easton Street in Nimishillen Township. Appellant, whose father owned the Mercury, was sitting behind the wheel, keys in the ignition, apparently asleep. The car's engine was running. Gurlea yelled to appellant to get his attention, but appellant did not respond. Gurlea then approached appellant and tapped him on the shoulder. As appellant slowly began to wake up, Gurlea noticed that appellant's eyes were glassy, and that he spoke in a garbled fashion. Gurlea also noted the smell of alcoholic beverage emitting from the car's interior. He also detected the odor of what he considered to be a burnt clutch or overheated brakes. However, there was no notable evidence of an accident.
 {¶ 3} Gurlea engaged appellant in conversation. Appellant admitted to having had a few drinks earlier in the day, but would not state the location from which he had come. Appellant's driver's license, however, listed his address as Uniontown, Ohio. Appellant began acting in a belligerent fashion, especially after the arrival of Gurlea's back-up, Sergeant Ronald Perdue. After some initial protest, appellant was placed in the back of one of the cruisers, at which time Sgt. Perdue administered a HGN test. All six HGN clues were present. Appellant told Sgt. Perdue he had consumed two glasses of wine earlier, but again did not indicate the location whence he had come.
 {¶ 4} Appellant was charged with driving while intoxicated, R.C.4511.19(A)(1) and (A)(3). At the bench trial the parties stipulated to the B.A.C. Datamaster readout and appellant's breathalyzer test results of .135. The parties also stipulated to a mechanic's letter indicating that the Mercury was inoperable when towed into the shop because of problems with the clutch and transmission pressure plate. The state called as witnesses Deputy Gurlea and Sgt. Perdue, following which the parties rested.
 {¶ 5} Appellant was found appellant guilty on the R.C. 4511.19(A)(1) charge. The court thereafter sentenced appellant to community service. Appellant timely appealed and herein raises the following sole Assignment of Error:
 {¶ 6} "I. THE APPELLANT'S CONVICTION WAS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE APPELLANT'S VEHICLE WAS NOT CAPABLE OF MOVING."
 I. {¶ 7} In his sole Assignment of Error, appellant contends his OMVI conviction was contrary to law and against the manifest weight of the evidence, based on the immobility of his automobile at the time of the traffic stop. We disagree.
 {¶ 8} Our standard of review for manifest weight in criminal matters is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. In support of his position, appellant chiefly cites three cases which address the capability of motion or operability of an automobile in R.C. 4511.19
cases: State v. Mackie (1998), 128 Ohio App.3d 167; State v. Cleary
(1986), 22 Ohio St.3d 198; and City of Columbus v. Seabolt (1992),79 Ohio App.3d 234. These three cases follow a "sufficiency of the evidence" pattern of analysis; hence, we are inclined to read appellant's arguments as a legal sufficiency challenge, which we will analyze accordingly.
 {¶ 9} In considering an appeal concerning the sufficiency of the evidence, our standard is as follows: " * * * [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, 273. In essence, appellant argues that the undisputed inoperability of his Mercury renders his actions on the night in question insufficient for the definition of "operation" of a motor vehicle, despite his presence behind the wheel with the engine running.
 {¶ 10} In Mackie, supra, police were summoned after a local resident noticed a car stuck off the road in a snowbank. The car was further on top of a horizontal telephone pole used for landscaping, having struck two mailboxes in the process of going off the road at about 1 or 2 AM. The resident observed the defendant in the stuck car, with the engine running. At that point, another car was unsuccessfully attempting to dislodge appellant's vehicle via a steel cable. A sheriff deputy arrived at about 5 AM and observed indicia of alcohol consumption by the defendant, who was later tested at .197 breath-alcohol concentration. On appeal following conviction, the Hamilton County Court of Appeals reasoned that the defendant could not have "operated" the vehicle, since it was incapable of movement under such facts. Id. at 173.
 {¶ 11} The Mackie court referenced the decision of the Ohio Supreme Court in State v. Cleary, supra, wherein a police officer had found an intoxicated and sleeping defendant in the driver's seat, behind the wheel, engine running. The Supreme Court held that the defendant was "operating" the motor vehicle, stating: "Operation of a motor vehicle within the contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat with the ignition key in his possession indicating either his actual or potentialmovement of the vehicle while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1)." (Emphasis added.) Id. at 199, 490 N.E.2d at 575.
 {¶ 12} Mackie also cites Seabolt, supra, in which an intoxicated defendant was sitting behind the steering wheel of her pickup truck with the motor running, at approximately 3:45 AM. It was stipulated the truck was totally immobile, being stuck in the mud with two flat tires. The Franklin County Court of Appeals opined: "The key issue is whether there was evidence that defendant drove or was in actual physical control of the vehicle while she had the requisite concentration of alcohol in her system. Under the stipulated facts, there was insufficient evidence to prove beyond a reasonable doubt that defendant drove the vehicle into its place of immobility while under the influence of alcohol. While one might speculate that she had driven the vehicle into the mud where it became mired and immobile, there was no direct evidence that she did so and no circumstantial evidence sufficient to allow that finding beyond a reasonable doubt." Id. at 237.
 {¶ 13} Nonetheless, as the State points out in its appellee's brief, focusing solely on the issue of an automobile's potentiality for movement is an incomplete analysis in these types of cases. In other words, "[t]he focus should not be narrowly upon the mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability, it can no longer move." State v. Pesa, Mahoning App. No. 2000CA2,2001-Ohio-3380 (citations omitted). The Seabolt court, for example, noted the following: "While a mere running of an engine of a totally immobile vehicle is not operation within the physical control part of the section, there still may be conviction of driving while under the influence of alcohol if there is sufficient direct or circumstantial evidence that defendant, while under the influence of alcohol, drove the automobile into the place where it became immobile." Seabolt, supra, at 238. See, also State v. Robinson, Montgomery App. No. 18714,2001-Ohio-1394. Holding otherwise would conceivably allow an intoxicated defendant whose vehicle is rendered inoperable in a collision to escape prosecution. See Pesa, supra, quoting State v. Smelter (Wash.App. 1984), 674 p. 2d 690, 693.
 {¶ 14} In the case sub judice, appellant was discovered on a stretch of Easton Street in the early morning hours with no other individuals in or near the car. The nearest intersecting road to Easton is Bentler, about one-eighth of a mile to the west; the nearest intersecting road to the east was described as two to three miles away. Tr. at 11. Gurlea recalled that Easton is a two-lane road in a rural area with mostly surrounding farm fields. Id. Appellant was traveling alone, outside of his hometown of Uniontown, with no unusual items or contraband in the vehicle. Tr. at 17. The burnt clutch or brake smell was still evident, suggesting the breakdown was still recent when Deputy Gurlea arrived. Most importantly, Gurlea recalled: "When I asked him if he knew how he got here, he told me he was there because I had stopped him." Tr. at 12. This is distinguishable from the scenario in Mackie, in which the defendant indicated that he had walked home after the car went off the road, unsuccessfully tried to get some friends to help, and then returned several hours later with his girlfriend and her car, after consuming more alcohol.
 {¶ 15} We therefore find sufficient direct and circumstantial evidence existed to prove appellant operated the Mercury in an intoxicated state until such time as it reached its stopped, inoperable state, thus supporting the conviction in the trial court. Furthermore, as the Mackie court recognized, appellate court cases on the topic of operability tend to be fact-specific. Id. at 170. Our decision herein is buttressed by the additional fact that appellant's Mercury, unlike the cars described in a number of the "operability" cases, was not found on private property. Gurlea described the Mercury's position on Easton as being "mostly on the roadway with only a slight portion of it being off, off of the roadway." Tr. at 10. Thus, appellant, by choosing to simply stay in his driver's seat and sleep off the results of his drinking, allowed his vehicle to sit stationary just partially off the roadway, meaning a portion of the Mercury's body continued to partially block a lane of travel at night, creating an ongoing hazard to other drivers who may have come upon the scene. We therefore additionally conclude, under this set of facts, that appellant's operational control of the vehicle effectively continued after the transmission breakdown had immobilized his car on the roadway. Cf. Pesa, supra, citing Commonwealth v. Taylor
(Pa.Super 1975), 352 A.2d 137, 140.
 {¶ 16} Accordingly, appellant's sole Assignment of Error is overruled.
 {¶ 17} For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is hereby affirmed.
By: Wise, J., Farmer, P.J., and Boggins, J., concur.