[Cite as *State v. Burnett*, 2019-Ohio-2461.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-134 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-35 |
| | : | |
| FATE E. BURNETT, II | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of June, 2019.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

FATE E. BURNETT, II, #A734-584, P.O. Box 69, London, Ohio 43140
    Defendant-Appellant, Pro Se

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  Burnett appeals from the November 21, 2018 judgment of the Clark County

Court of Common Pleas, which overruled his pro se petition for post-conviction relief. We hereby affirm the judgment of the trial court.

{¶ 2} Following a jury trial on April 18, 2017, Burnett was convicted on one count of operating a vehicle while intoxicated ("OVI"), a felony of the third degree, in violation of R.C. 4511.19(A), and a repeat-offender specification. The trial court imposed a three-year prison sentence for the OVI offense, a consecutive four-year term on the repeat-offender specification, a license suspension, a fine, and court costs. This court affirmed Burnett's conviction on direct appeal. *State v. Burnett*, 2018-Ohio-109, 109 N.E.3d 61 (2d Dist.). In our opinion, the facts were set forth as follows:

> * * * The first witness was Derek Smith, a Springfield police officer. He testified that he responded to 223 South York Street around 1:00 a.m. on January 12, 2017 to investigate a car crashed into the back yard of a house. Upon arriving, he saw a pick-up truck parked in the yard. "The vehicle's engine was revving. The rear wheels were spinning. The vehicle was just rocking." The spinning rear wheels were causing the rear of the vehicle to move from "side to side" and "back and forth" in the mud. Upon closer inspection, Smith noticed that the front, passenger-side wheel was "completely broken off." Tire tracks and marks in the yard made it appear to Smith as if the spinning wheels actually had caused the truck to change direction somewhat in the yard. The only occupant of the vehicle was appellant Burnett, who was in the driver's seat. After being ordered out of the vehicle, an obviously intoxicated Burnett "charged" toward Smith, who was able to restrain him with help from another officer. Burnett admitted

to Smith that he had been drinking at "Waldon's bar" that night. He claimed his aunt, Brenda Burnett, who lived at 223 South York Street, had been drinking with him at the bar. He also claimed that she had driven him home from the bar and that she then had asked him to remove the truck from her yard. According to Smith, Burnett denied that anyone other than himself and his aunt had driven the truck that night. At another point, Burnett claimed his father had driven the truck and that someone named Cody Kizer[1] had dropped him off. After refusing a breath test and refusing to perform field-sobriety tests, Burnett was arrested for OVI.

* * *

Appellant Burnett's aunt, Brenda Burnett, also testified as a prosecution witness. She stated that she heard a banging noise outside her house followed, after about a ten-minute delay, by "an engine gunning like it was stuck, a car was stuck." Brenda Burnett explained that she had worked at Waldon's bar earlier in the evening, but her shift had ended at 10:00 p.m. She added that she had not seen appellant Burnett in the small bar that evening before she left. In fact, she testified that she had not seen him for two or three weeks prior to the incident in question. Brenda Burnett also stated that she had not seen Cody Kizer or appellant Burnett's father, Joel Luking, that evening. Brenda Burnett denied asking appellant Burnett to move the truck and denied driving the truck that evening.

---

[1] Burnett's cousin, Cody Kiser, provided an affidavit in support of Burnett's petition for post-conviction relief, as discussed below. His name appears to have been spelled incorrectly in our prior opinion.

(Citations to the transcript omitted.) *Burnett* at ¶ 3, 6.

**{¶ 3}** On November 15, 2018, Burnett filed a petition for post-conviction relief, along with his own affidavit, a motion for expert assistance, and a motion for appointment of counsel. In his affidavit, Burnett asserted that his brother Cody "got his truck stuck in our aunt's backyard" and, after Cody was unable to move the truck and left to retrieve a trailer, Burnett tried to dislodge the truck. The affidavit provided: "I didn't think of what I was doing, by trying to move the truck within the yard, as actually drinking and driving. But the truck couldn't be moved no matter what." Burnett averred that his "aunt was subpoenaed by the prosecution but only showed up because she was there to support me. That's why I believed the jury would find me innocent based on the defense of inoperability." Burnett asserted that "Ryan Saunders was the prosecutor in my prior OVI case, and due to my extensive record, and history with him and Judge Rastatter, he was unwilling to hear or even consider any possibility other than if I was out drinking and driving in a complete disregard for the law [sic]." Burnett averred that although "the attorney for the State at trial was Lisa Hoying I believe that Mr. Saunders was the person who was prosecuting my case or pulling the strings from behind the curtain."

**{¶ 4}** Burnett's affidavit described the circumstances surrounding his plea negotiations and trial as follows:

> * * * I was faced with two choices. Take a plea or go to trial. At first
> Rebecca Sinnott[2] informed me that I would be found guilty if I went to trial,
> because the state only had to prove two (2) things, that I was drunk and that

---

[2] Rebekah Sinnott was Burnett's defense counsel in the trial court proceedings. Burnett spelled her name inconsistently and incorrectly in his affidavit.

I operated the truck. She explained that operate means causing the truck to move, even a little. But the first plea agreement only offered to dismiss Count One and left the specification with its five year mandatory sentence on the table. So at that time the choice was easy because I knew either way Judge Rastatter was going to max me out. So I believe that me declining the first offer motivated [Rebekah] to research and that[']s when she came up with the defense in [State v. Mackie, 128 Ohio App.3d 167, 714 N.E.2d 405 (1st Dist.1998)]. [Mackie] almost sounded to[o] good to be true from what I understood. But after I spoke with [Rebekah] via telephone conference * * * and read the case for myself I understood that even though there was all the elements of OVI, and [I] could be found guilty, I could still be found not guilty if I could prove I did not drive the truck to my aunt[']s, and that the vehicle was inoperable when I got in it.

However, that choice to go to trial became a lot more difficult on the day of trial when the prosecutor offered to dismiss Count One and both specifications. Now, there was a real offer and the Judge would not have a say regarding the Specification. Meaning 5 of the potential mandatory years was gone and I was only looking at a Maximum of three years. I asked [Rebekah] several times what she thought my chances of success were but she would only say that we have a strong defense.

Ultimately I had to choose between taking the plea and only risk 3 years in prison or go to trial and risk 8 years in prison with up to 5 of it being mandatory, while considering my history with Judge Rastatter, * * * I knew I

would get all or most of whatever he could possibly give me without any consideration of the circumstances in my case.

That being said it is clear that I hung my hat entirely 100% on the **AFFIRMATIVE DEFENSE OF INOPERABILITY.**

\* \* \*

**{¶ 5}** In his first claim in his petition for post-conviction relief, Burnett argued that he was denied his Sixth Amendment right to the effective assistance of counsel because his attorney advised him "of an erroneous or outdated affirmative defense" and failed to ensure that the affirmative defense was "properly explained in front of the jury" and that the jury was instructed so as "to fully inform the jury of the type of defense and how it operated as an exemption." Burnett asserted that defense counsel "gave erroneous information and advi[c]e" regarding the affirmative defense set forth in *Mackie*, "causing Burnett to turn down a very beneficial plea agreement with the state." He also asserted that the trial court committed plain error by "giving erroneous instructions on the affirmative defense of inoperability."

**{¶ 6}** We note that *Mackie* held as follows:

\* \* \* [W]e hold that inoperability is a defense upon which the defendant bears the burden of proof. In this case, the state presented insufficient circumstantial evidence to support the inference that Mackie was operating the vehicle while intoxicated immediately prior to it becoming immobile. To the contrary, the unrefuted evidence \* \* \* was that the accident that immobilized the vehicle occurred several hours earlier when Mackie was not intoxicated. Further, the unrefuted evidence showed that

when Mackie was intoxicated, his car was completely immobile and had no potential for movement. There was no evidence showing that it could be rocked or moved, even slightly. * * * Consequently, Mackie did not have control of the vehicle, and he could not have used it to create a hazard to other persons or vehicles on the highway.

*Mackie,* 128 Ohio App.3d 167, 173, 714 N.E.2d 405.

{¶ 7} At his trial, Burnett requested a jury instruction based upon the holding in *Mackie*, and the court denied his request. On appeal, Burnett argued that the trial court erred in not instructing the jury as requested. *Burnett* at ¶ 2. This court noted that the "*Mackie* case cited by Burnett pre-dates the definition of 'operate' in R.C. 4511.01(HHH)." *Burnett* at ¶ 16. This court also noted that "the trial court gave the jury the statutory definition of 'operate' set forth in R.C. 4511.01(HHH). * * * Under that definition, Burnett correctly could not be convicted unless he caused movement of the truck. Upon review, we cannot say the trial court abused its discretion in instructing the jury as it did or in rejecting Burnett's requested instruction." *Id.* at ¶ 18. We note that the trial court did instruct the jury that "[i]noperability of the vehicle at issue is a defense to OVI."

{¶ 8} In his second claim, Burnett asserted that he filed a pro se motion to continue his jury trial on April 14, 2017, "because he had finally gotten the money to hire counsel outside the Public Defender's office," and that the trial court erred by not holding a hearing on the merits of the request to change counsel, especially when Burnett had the means "to afford his counsel of choice."

{¶ 9} Burnett attached numerous items to his petition, including: his April 14, 2017 pro se "Notice of Proceeding without Counsel"; his April 14, 2017 pro se "Motion for

Reasonable Continuance"; the trial court's April 17 entry ordering the clerk to "void" Burnett's April 14, 2017 pro se filings (because he was represented by counsel); the State's April 18, 2017 request for jury instructions; "Defendant's Trial Witness Disclosure"; Burnett's "Request for Jury Instruction"; a "Law Enforcement Arrest Report/ Probable Cause Affidavit" relating to Burnett's arrest; an "Affidavit of Original Plaintiff," signed by Brenda Burnett, which stated that "Cody and Fate have permission to be on my property anytime"; portions of Burnett's trial transcript; and an "Affidavit of Witness #3," signed by Cody Kiser, which provided that, while on his way to pick up Burnett on January 12, 2017, his truck broke down and eventually became stuck in the mud at his aunt's house. Kiser's affidavit further stated that he left Burnett at their aunt's home while he (Kiser) went to his boss's house to get a trailer, and when he returned, Burnett "was in jail and my truck had been towed."

{¶ 10} The State did not respond to Burnett's petition.

{¶ 11} In overruling the petition on November 21, 2018, the court determined as follows:

> Under the doctrine of res judicata, a court may not consider issues that a defendant raised or could have raised on direct appeal in post-conviction relief proceedings. State v. Damron, 2010-Ohio-6459 (4th Appellate District); State v. Nichols, 11 Ohio St.3d 40 (1984).
>
> The defendant's November 15, 2018 petition for post-conviction relief is OVERRULED because his claims were raised, or could have been raised in his unsuccessful direct appeal to the Second District Court of Appeals.

{¶ 12} Burnett asserts the following assignment of error:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DECIDED NOT TO HOLD AN EVIDENTIARY HEARING ON EVIDENCE EXISTING DEHORS THE RECORD AND OVERRULED APPELLANT'S PETITION FOR POST CONVICTION RELIEF BASED ON RES JUDICATA.

{¶ 13} Burnett asserts that his affidavit set forth sufficient operative facts outside the trial and appellate records to establish substantive grounds for relief. Burnett also asserts that the evidence he cites outside the record, along with the evidence he cites in the record, "fully collaborates [sic] his claims beyond enough credibility to support a[n] evidentiary hearing."

{¶ 14} Under R.C. 2953.21(A)(1)(a), "[a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." As relevant to Burnett's circumstances, a petition must be filed "no later than three hundred sixty-five days after the date on which the trial transcript [was] filed in the court of appeals in the direct appeal of the judgment of conviction[.]" R.C. 2953.21(A)(2); *see also State v. Evans*, 2d Dist. Montgomery No. 26574, 2015-Ohio-3161, ¶ 5.

{¶ 15} The transcript of the trial proceedings was filed in Burnett's direct appeal on May 25, 2017. Burnett's petition for post-conviction relief was filed on November 15,

2018, or almost six months after the deadline set forth in R.C. 2953.21(A)(2). Therefore, R.C. 2953.23(A)(1)(a) and (b) obligated Burnett to show that he was unavoidably prevented from discovering the facts upon which his petition relied *and* that but for constitutional error at trial, no reasonable fact-finder would have found him guilty. *See also Evans* at ¶ 6. " 'The phrase "unavoidably prevented" means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence.' " *State v. Wells*, 2d Dist. Champaign No. 2010 CA 5, 2010-Ohio-3238, ¶ 10, citing *State v. McDonald*, 6th Dist. Erie No. E-04-009, 2005-Ohio-798, ¶ 19.

{¶ 16} As further noted in *State v. Rainey,* 2d Dist. Montgomery No. 23851, 2010-Ohio-5162:

> The post-conviction relief statutes do "not expressly mandate a hearing for every post-conviction relief petition and, therefore, a hearing is not automatically required." *State v. Jackson* (1980), 64 Ohio St.2d 107, 110, 413 N.E.2d 819. Rather, in addressing a petition for post-conviction relief, a trial court plays a gatekeeping role as to whether a defendant will receive a hearing. * * * A trial court may dismiss a petition for postconviction relief without a hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun* (1999), 86 Ohio St.3d 279, 714 N.E.2d 905, paragraph two of the syllabus; * * *

*Id.* at ¶ 15.

{¶ 17} "We review a trial court's denial of post-conviction relief under R.C. 2953.21

for an abuse of discretion, and we will not disturb a ruling that is supported by competent, credible evidence." *State v. Redavide*, 2d Dist. Montgomery No. 26929, 2016-Ohio-7804, ¶ 14, citing *State v. White,*118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 45.

{¶ 18} Burnett's brief identifies the following evidence as "evidence existing dehors the record" which "could not have been raised on direct appeal": 1) this court's opinion affirming Burnett's conviction, which Burnett asserts "decided that the issue of inoperability was not an affirmative defense that was available to Burnett at the time of his trial"; 2) Burnett's "own personal understanding and/or misunderstanding of the law that applied to his particular case as a direct result of his Trial Counsel's advice regarding the affirmative defense raised";  3) "details of the Plea Offer discussed and rejected based on Counsel's advice regarding the inoperability defense, which occurred outside Judge Rastatter's court room on the third floor mid trial";  4) "[d]irect evidence that the vehicle was inoperable, i.e. Officer Smith's testimony that he physically got in the truck and tried to move it from the yard prior to calling a tow company * * * that was mysteriously omitted from the record i.e. 'transcripts'.  Direct Evidence that was not available on appeal because it mysteriously vanished from the record"; 5) Burnett's pro se "Notice of Proceeding without Counsel"; and 6) Burnett's pro se "Motion for Reasonable Continuance."

{¶ 19}  The State notes that, in addition to his petition being untimely, Burnett did not meet either exception in R.C. 2953.23(A), "and therefore the trial court did not have jurisdiction to consider the petition." The State further asserts that Burnett's arguments were barred by res judicata.

**{¶ 20}** In his partially-handwritten reply, Burnett asserts that the State "does not oppose or try to negate any of the legitimate issues presented or the existence of the evidence outside the record," such that res judicata does not apply. He also asserts that the State did not argue in the trial court that his petition was untimely, and the court did not so determine; therefore, "the State cannot now raise as a defense, the timeliness of the petition, to prevent this court from considering the merits of the petition on appeal." Burnett observes that the State does not refute "the obvious fact that Burnett would have taken that plea in the absence of the bad advice regarding the affirmative defense of inoperability." According to Burnett, the "dehors evidence and issues presented are now before this Court and the State cannot refute any of it without committing perjury."

**{¶ 21}** We agree with the State's arguments. We further conclude that Burnett's list of evidence dehors the record is not of the sort contemplated by R.C. 2953.23. Our opinion affirming Burnett's conviction reviewed the prior proceedings and overruled Burnett's assigned errors based upon applicable law. Ineffective assistance of counsel claims regarding inoperability as a defense, the rejection of a plea offer based upon *Mackie,* and/or an alleged trial court error in instructing the jury on the meaning of "operating" a vehicle were or could have been brought on direct appeal. The alleged absence of trial testimony from the record could also have been raised on appeal. Finally, the trial court's failure to grant a continuance for Burnett to retain counsel could have been raised on direct appeal. The trial court correctly concluded that res judicata barred Burnett's arguments.

**{¶ 22}** Burnett's petition was also untimely, and he failed to present evidence that he was unavoidably prevented from discovering the facts upon which his petition relied

and that, if not for constitutional error, no reasonable fact-finder would have found him guilty.

{¶ 23} Since res judicata barred his claims and his petition was untimely, the trial court did not abuse its discretion in overruling Burnett's petition without a hearing. Burnett's assignment of error is accordingly overruled.

{¶ 24} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies sent to:

John M. Lintz
Fate E. Burnett, II
Hon. Douglas M. Rastatter