[Cite as *State v. Burnett*, 2018-Ohio-109.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-44 |
| | : | |
| v. | : | Trial Court Case No. 17-CR-35 |
| | : | |
| FATE BURNETT, II | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of January, 2018.

. . . . . . . . . . .

ANDREW PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
     Attorney for Plaintiff-Appellee

CHRIS BECK, Atty. Reg. No. 0081844, 1370 N. Fairfield Road, Suite C, Beavercreek, Ohio 45432
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Fate Burnett appeals from his conviction and sentence on one count of operating a vehicle while intoxicated (OVI), a third-degree felony, and a repeat-offender specification.

{¶ 2} Burnett advances three assignments of error. First, he contends the trial court erred in not providing a requested jury instruction. Second, he alleges ineffective assistance of trial counsel. Third, he challenges the legal sufficiency of the evidence to convict him of OVI.

{¶ 3} The record reflects that Burnett's case proceeded to a jury trial on April 18, 2017. The first witness was Derek Smith, a Springfield police officer. He testified that he responded to 223 South York Street around 1:00 a.m. on January 12, 2017 to investigate a car crashed into the back yard of a house. Upon arriving, he saw a pick-up truck parked in the yard. "The vehicle's engine was revving. The rear wheels were spinning. The vehicle was just rocking." (Trial Tr. at 79). The spinning rear wheels were causing the rear of the vehicle to move from "side to side" and "back and forth" in the mud. (*Id.* at 81, 91, 115, 118, 124). Upon closer inspection, Smith noticed that the front, passenger-side wheel was "completely broken off." (*Id.* at 80). Tire tracks and marks in the yard made it appear to Smith as if the spinning wheels actually had caused the truck to change direction somewhat in the yard. (*Id.* at 92). The only occupant of the vehicle was appellant Burnett, who was in the driver's seat. After being ordered out of the vehicle, an obviously intoxicated Burnett "charged" toward Smith, who was able to restrain him with help from another officer. (*Id.* at 81-83, 113). Burnett admitted to Smith that he had been drinking at "Waldon's bar" that night. (*Id.* at 84). He claimed his aunt, Brenda Burnett, who lived at

223 South York Street, had been drinking with him at the bar. He also claimed that she had driven him home from the bar and that she then had asked him to remove the truck from her yard. (*Id.* at 84, 106). According to Smith, Burnett denied that anyone other than himself and his aunt had driven the truck that night. (*Id.* at 107). At another point, Burnett claimed his father had driven the truck and that someone named Cody Kizer had dropped him off. (*Id.* at 107, 116). After refusing a breath test and refusing to perform field-sobriety tests, Burnett was arrested for OVI. (*Id.* at 88-97, 109, 111).

{¶ 4} Sergeant James Byron testified that he arrived on the scene after Burnett's arrest. He observed the truck sunk in mud with "lots of tracks where the vehicle had been slipping and sliding around." (*Id.* at 133). Byron stated that "[t]here were obvious marks where the truck had gone off the road, and then where there were multiple attempts of trying to go back and forth to get it back on the road." (*Id.* at 136). It appeared to Byron as if the truck had moved in the yard based on "obviously multiple tire patterns where the truck had gone back and forth and slid around." (*Id.* at 138).

{¶ 5} The next witness was police officer Justin Lowe. He stated that he was on patrol with Smith at the time of the incident. Lowe provided testimony similar to Smith's. He testified that he saw Burnett in the truck, which was rocking back and forth in the yard. He also testified that Burnett was obviously intoxicated and had admitted drinking that night. (*Id.* at 147-150). In addition, Lowe confirmed that Burnett declined a breath test and declined to perform any field-sobriety tests. (*Id.* at 154-155).

{¶ 6} Appellant Burnett's aunt, Brenda Burnett, also testified as a prosecution witness. She stated that she heard a banging noise outside her house followed, after about a ten-minute delay, by "an engine gunning like it was stuck, a car was stuck." (*Id.*

at 164). Brenda Burnett explained that she had worked at Waldon's bar earlier in the evening, but her shift had ended at 10:00 p.m. She added that she had not seen appellant Burnett in the small bar that evening before she left. (*Id.* at 165-166). In fact, she testified that she had not seen him for two or three weeks prior to the incident in question. (*Id.* at 165). Brenda Burnett also stated that she had not seen Cody Kizer or appellant Burnett's father, Joel Luking, that evening. (*Id.* at 168). Brenda Burnett denied asking appellant Burnett to move the truck and denied driving the truck that evening. (*Id.* at 168-170).

{¶ 7} Brenda Burnett's husband, Charles Porter, also testified for the State. He explained that "commotion" outside awoke him from his sleep. (*Id.* at 179). He went outside and saw the truck in the mud. He then went back into the house and told his wife, "There's some kid out there stuck in my lot." (*Id.* at 179). Porter could not determine the identity of the person. Nor could he tell how many occupants were in the truck. (*Id.* at 179-180). It only took Porter a couple of minutes to go outside after hearing the commotion, and he did not see anyone exit the truck, which was "[m]oving back and forth." (*Id.* at 180). Porter also went back outside again before the police came, and he did not see anyone leave or arrive at the property. (*Id.* at 181). Porter eventually recognized appellant Burnett when he was removed from the truck and arrested. (*Id.*).

{¶ 8} Following Porter's testimony, the parties stipulated to Burnett's prior OVI convictions. After the admission of its exhibits, the State rested. The trial court denied a Crim.R. 29 motion predicated on (1) a lack of evidence that Burnett drove the truck prior to it being observed in the yard and (2) the truck being inoperable in the yard due to the broken wheel. (*Id.* at 187-190).

{¶ 9} Defense counsel then called two witnesses. The first was Jade Carpenter.

She testified that appellant Burnett was the half-brother of her fiancé, Cody Kizer. (*Id.* at 191-192, 201). According to Carpenter, she was home with Kizer in the early morning hours of January 12, 2017. She stated that between approximately 12:00 a.m. and 1:00 a.m., Kizer woke her and said he had to go pick up Burnett. (*Id.* at 193). Kizer then left, and Carpenter went back to sleep. (*Id.* at 195). After later receiving a call from Kizer, Carpenter said she went and picked him up at Brenda Burnett's house because the truck, which Kizer had been driving, was broken. (*Id.* at 196). Carpenter testified that after picking up Kizer, they both proceeded to "Jimmy T's bar," where they picked up appellant Burnett. (*Id.* at 197). Carpenter explained that the trio then returned to Brenda Burnett's house, where she and Kizer dropped off appellant Burnett at the truck. (*Id.* at 198). Carpenter claimed she and Kizer returned later in the morning to find the truck and appellant Burnett gone. (*Id.* at 200, 213-214).

{¶ 10} Cody Kizer also testified as a defense witness. He stated that an intoxicated Burnett called him from Jimmy T's bar and requested a ride. Kizer explained that he was driving the truck to get Burnett when a tie rod broke as he crossed a railroad track. Kizer happened to be going past Brenda Burnett's house at the time, so he pulled into her yard. (*Id.* at 221-222). He then called Carpenter to pick him up in her car. The two of them proceeded to Jimmy T's to get appellant Burnett. (*Id.* at 223). They then returned to the truck and dropped Burnett off there with the intention of borrowing a trailer to retrieve the vehicle. (*Id.*). He returned hours later after sunrise to look for Burnett but did not find him there. (*Id.* at 224). He also discovered that the truck was gone. (*Id.* at 225). On cross examination, Kizer stated that he left Burnett alone with the broken truck and the keys to it for several hours before returning because Burnett was intoxicated and annoying. (*Id.*

at 229-230).

{¶ 11} Based on the evidence presented, a jury found Burnett guilty of OVI in violation of R.C. 4511.19(A)(1) and (A)(2). With regard to both offenses, it also found that he previously had been convicted of felony OVI and that he had five or more OVI violations within the previous twenty years. (Doc. #19, 20). The trial court merged the two counts for sentencing, and the State elected to proceed on the R.C. 4511.19(A)(1) violation, a third-degree felony. The trial court imposed a three-year prison sentence for the OVI offense and a consecutive four-year prison term on a repeat-offender specification. (Doc. #21). It also suspended Burnett's driver's license for life, imposed a fine, and ordered him to pay court costs.

{¶ 12} In his first assignment of error, Burnett challenges the trial court's denial of his request for a special jury instruction regarding operation and operability of the truck.

{¶ 13} The statute under which Burnett was convicted, R.C. 4511.19(A), provides among other things that "[n]o person shall operate any vehicle * * * if, at the time of the operation," that person is under the influence of alcohol. Prior to trial, Burnett requested the following instruction on the issue of "operation" and "operability":

> Operation of a motor vehicle within the contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat with the ignition key in his possession indicating either his *actual or potential movement of the vehicle* while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)(1). However, inoperability is a defense where there is insufficient evidence to support the finding that at [the] time the defendant was in the driver's

position in the front seat with the ignition key in his possession that the vehicle was immobile, not capable of movement or potential movement then the defendant was not at that time in operation of the motor vehicle and you must find him not guilty.

(Doc. #17).

{¶ 14} Burnett argued below that the foregoing instruction was warranted under *State v. Mackie*, 128 Ohio App.3d 167, 714 N.E.2d 405 (1st Dist.1998). The trial court disagreed. It found *Mackie* distinguishable. It also concluded that R.C. 4511.01(HHH), which was enacted subsequent to *Mackie*, adequately defined "operate" for purposes of the OVI statute. (Tr. at 245-246).

{¶ 15} "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction. * * * An appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion." (Citations omitted.) *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240.

{¶ 16} We see no abuse of discretion here. The first sentence of Burnett's requested instruction is no longer a correct statement of law. "Potential movement" of a vehicle by an intoxicated person in the driver's seat with an ignition key does not constitute a violation of R.C. 4511.19(A)(1). Prior to 2004, no statutory definition of "operate" existed for purposes of OVI, and the Ohio Supreme Court had defined the term broadly to encompass " 'actual or potential movement of the vehicle' " by " 'a person in the driver's position in the front seat with the ignition key in his possession.' " *State v. Anderson*, 1st

Dist. Hamilton No. C-160920, 2017-Ohio-8641, ¶ 12, quoting *State v. Cleary*, 22 Ohio St.3d 198, 199, 490 N.E.2d 574 (1986). In 2004, however, the General Assembly defined the term "operate" as meaning "to cause or have caused movement of a vehicle[.]" R.C. 4511.01(HHH). The *Mackie* case cited by Burnett pre-dates the definition of "operate" in R.C. 4511.01(HHH). Under the statutory definition, an OVI conviction requires actual movement of a vehicle by an intoxicated person, not "potential movement." Therefore, the first sentence of Burnett's requested instruction misstated existing law.

{¶ 17} The second sentence of the requested instruction is faulty for multiple reasons. First, it is confusing and inaccurate. It reads that "inoperability is a defense where there is insufficient evidence to support the finding that at [the] time the defendant was in the driver's position * * * the vehicle was immobile, not capable of movement or potential movement[.]" This language is incorrect insofar as it continues to discuss "potential movement" in the context of an OVI offense. In addition, it literally states that "inoperability" is a defense where the evidence is *insufficient* to support a finding that the vehicle was immobile. But the logical result would be *mobility*, not immobility, if the evidence were *insufficient* to support a finding that the vehicle was immobile. The second sentence of the requested instruction also loosely resembles and relates to a new offense created by the General Assembly in 2004, having physical control of a vehicle while under the influence of alcohol. *See* R.C. 4511.194(B) (prohibiting being "in physical control of a vehicle" while under the influence of alcohol). For purposes of that offense, " '[p]hysical control' means being in the driver's position of the front seat of a vehicle * * * and having possession of the vehicle's * * * ignition key or other ignition device." R.C. 4511.194(A)(2). Here Burnett was charged with operating a vehicle while intoxicated, not having "physical

control" of a vehicle while intoxicated. Therefore, the second sentence of the requested instruction was neither particularly pertinent nor necessary.

{¶ 18} With regard to operability and whether Burnett operated the truck at issue, the trial court gave the jury the statutory definition of "operate" set forth in R.C. 4511.01(HHH). (Tr. at 273-274). Under that definition, Burnett correctly could not be convicted unless he caused movement of the truck. Upon review, we cannot say the trial court abused its discretion in instructing the jury as it did or in rejecting Burnett's requested instruction. The first assignment of error is overruled.

{¶ 19} In his second assignment of error, Burnett alleges ineffective assistance of trial counsel based on (1) his attorney's failure to request an instruction on the "lesser-included offense" of physical control under R.C. 4511.194(B) and (2) his attorney's "manner in * * * argu[ing] for the jury instruction on operability."

{¶ 20} We quickly may dispose of the second issue. Regardless of how defense counsel might have argued for the proposed instruction discussed above, it was an incorrect statement of law and unwarranted in the context of an OVI charge. Therefore, the trial court did not err in refusing to give it and, instead, instructing the jury consistent with R.C. 4511.01(HHH).

{¶ 21} The real issue raised by Burnett's second assignment of error concerns his attorney's failure to request an instruction on the offense of having physical control of a vehicle while under the influence of alcohol in violation of R.C. 4511.194(B).

{¶ 22} To prevail on an ineffective-assistance claim, a defendant must show deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show

that trial counsel's representation fell below an objective standard of reasonableness. *Id*. Prejudice exists and a reversal is warranted only where a defendant shows a reasonable probability that but for counsel's deficient performance the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

**{¶ 23}** We see no ineffective assistance here. As a threshold matter, at least one Ohio appellate district has held that a violation of the physical-control statute is not a lesser-included offense of OVI. *See State v. Taylor*, 9th Dist. Lorain No. 12CA010258, 2013-Ohio-2035, ¶ 7 ("[W]hile a person could operate a bicycle in violating R.C. 4511.19(A)(1)(d), a person could not be in physical control of it for the purposes of R.C. 4511.194(B)(2). Therefore, it is possible to violate R.C. 4511.19(A)(1)(d) without also violating R.C. 4511.194(B)(2), meaning that R.C. 4511.194(B)(2) is not a lesser-included offense of R.C. 4511.19(A)(1)(d)."). We need not resolve that issue, however, because we find no ineffective assistance even assuming, arguendo, that a violation of the physical-control statute is a lesser-included offense of OVI.

**{¶ 24}** An instruction on the physical-control statute as a lesser-included offense of OVI would be proper only if the jury reasonably could have found Burnett not guilty of OVI and guilty of having physical control of a vehicle while under the influence of alcohol. *State v. Landers*, 2d Dist. Greene No. 2015-CA-74, 2017-Ohio-1194, ¶ 87-89 (finding no basis for a lesser-included offense instruction where the evidence was such that the jury reasonably could not have acquitted the defendant on the charged offense and convicted him on the lesser-included offense). To reach such a conclusion, the jury would have been required to find that Burnett, who was indisputably intoxicated, did not cause "movement" of the truck, but that he was in "physical control" of the truck because he was

in the driver's seat and had possession of the vehicle's ignition key. Even viewing the evidence in the light most favorable to Burnett, as we must in the context of a lesser-included-offense instruction (*see Landers* at ¶ 87), the record fails to support a finding that he did not cause "movement" of the truck.

{¶ 25} We reach the foregoing conclusion for two reasons. First, as we will explain more fully in our analysis of the third assignment of error below, circumstantial evidence supports an inference that Burnett actually drove the vehicle on the road before it came to a stop in the yard. Second, even if the jury were to believe Burnett's witnesses' testimony, the record contains uncontroverted evidence that police saw him in the driver's seat "gunning" the engine and spinning the rear wheels, which caused the truck's rear end to slide around and to move from side to side. Photographs of multiple tire tracks in the mud indicate that the truck's rear end moved several feet. (Tr. at State's Exh. 4-6). As set forth above, the OVI statute makes it unlawful to "operate" a vehicle while under the influence of alcohol. The legislature has defined the term "operate," simply and unambiguously, as meaning "to cause or have caused movement of a vehicle[.]" R.C. 4511.01(HHH). Even under Burnett's version of events, he caused movement of the truck. Therefore, the jury reasonably could not have acquitted him of OVI and convicted him under the physical-control statute. That being so, there was no basis for a lesser-included offense instruction. The second assignment of error is overruled.

{¶ 26} In his third assignment of error, Burnett challenges the legal sufficiency of the evidence to sustain his OVI conviction. He cites the testimony of Carpenter and Kizer to support his claim that Kizer drove the truck to the yard where police observed it. He also argues that the truck was inoperable in the yard when police saw him in the driver's

seat revving the engine and spinning the rear wheels. Based on this claim of inoperability, Burnett contends he cannot be convicted of OVI for his actions in the driver's seat.

{¶ 27} When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 28} With the foregoing standards in mind, we find legally sufficient evidence to support Burnett's OVI conviction under either of two theories. First, circumstantial evidence supports an inference that an intoxicated Burnett drove the truck to the yard where police found it with a broken wheel. When questioned by police, Burnett gave seemingly conflicting stories about who had driven. He also claimed to have been with Brenda Burnett, but she refuted his assertion. She denied having been with him or seeing him that evening. Charles Porter also testified that it only took him a couple of minutes to go outside after hearing commotion. He did not see anyone exit the truck, which was moving back and forth. He also waited outside before police came and did not see anyone arrive or leave. The only person on the scene when police arrived was Burnett. The foregoing evidence, if believed, supports a reasonable inference that Burnett was driving

the truck when it left the road and stopped in the yard. We note too that the testimony of Carpenter and Kizer reasonably could have been rejected by the jury. Having reviewed a transcript of their testimony, we find the credibility of these witnesses is questionable. Among other things, the jury reasonably could have rejected Kizer's claim that he and Carpenter dropped Burnett off at the truck and left him there with the keys, alone at night in January for several hours, before returning after daylight to look for him. Kizer's explanation for this seemingly implausible action was that Burnett was intoxicated and annoying. Contrary to Kizer's testimony, the jury reasonably could have concluded that Burnett drove himself to the location in the yard where police found him in the driver's seat revving the engine.

{¶ 29} Second, the jury reasonably could have found Burnett guilty based on the police officers' observation of him operating the truck. The OVI statute, R.C. 4511.19(A), provides among other things that "[n]o person shall operate any vehicle * * * if, at the time of the operation," that person is under the influence of alcohol. As set forth above, the term "operate" means "to cause or have caused movement of a vehicle[.]" R.C. 4511.01(HHH). The State presented uncontroverted evidence that Burnett caused the truck to move appreciably from side to side in the mud when he revved the engine and spun the rear wheels. Because the vehicle was able to move in the yard, it necessarily was operable within the meaning of R.C. 4511.19(A). Thus, we find legally sufficient evidence to support a finding that Burnett operated the vehicle in violation of the OVI statute. The third assignment of error is overruled.

{¶ 30} The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

FROELICH, J., concurring:

{¶ 31} I agree that there was sufficient circumstantial evidence that appellant operated the vehicle on the road before it got stuck in the yard.

{¶ 32} I would not reach the issue as to whether the action of the truck's rear end constituted "operation" as defined in R.C.4511.01(HHH).

Copies mailed to:

Andrew P. Pickering
Chris Beck
Hon. Douglas M. Rastatter