**[Cite as *State v. Fisk*, 2019-Ohio-640.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27874 |
| | : | |
| v. | : | Trial Court Case No. 2017-CRB-2144 |
| | : | |
| ROBERT W. FISK | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of February, 2019.

. . . . . . . . . .

LINDSAY E. BOZANICH, Atty. Reg. No. 0097356, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

V. GAYLE MILLER, Atty. Reg. No. 0091528, P.O. Box 10124, Dayton, Ohio 45417
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Robert W. Fisk appeals from his conviction and sentence following a jury trial on one count of unauthorized entry upon a nuisance premises, a third-degree misdemeanor.

{¶ 2} Fisk advances three assignments of error. First, he challenges the legal sufficiency of the State's evidence to sustain his conviction. Second, he contends the trial court erred in overruling his request for a jury instruction on the affirmative defense of "necessity." Third, he claims the trial court erred in accepting a jury verdict that was rendered after less than 28 minutes of deliberation.

{¶ 3} The present appeal stems from an April 10, 2017 fire inside a house at 31 North McGee Street in Dayton. At trial, Fred Haney, a captain with the Dayton Fire Department, testified that several crews responded to the scene. Upon arriving, Haney found a "pretty significant fire" that he determined had started in the basement "due to a generator being used inside the structure." (Trial Tr. at 84-85.) Haney and the other firefighters successfully doused the fire, which had burned a hole through the roof and had caused a "partial collapse" on the second floor. (*Id.* at 86.) To be sure the fire was extinguished, the crews also had to tear up ceilings and walls. (*Id.* at 87.) In the course of their work, the firefighters also flooded the house with "probably six to eight inches of standing water on the floor." (*Id.* at 86.) They also knocked out one or more windows to discard debris. (*Id.* at 87.)

{¶ 4} While removing debris and making sure the fire was extinguished, Haney spoke to Fisk, a resident of the house. Fisk seemed "agitated" and wanted the firefighters

to leave. (*Id.* at 880.) According to Haney, Fisk admitted that a generator he was using in the basement had caught fire. (*Id.* at 99.) Following the fire, Haney believed the house "was dangerous to go in[.]" (*Id.* at 89.) He considered it "a hazard," and he contacted the Dayton Housing Department. (*Id.* at 89-90.) Haney recalled that two housing officials arrived on the scene, examined the house, and determined that it was unsafe. (*Id.* at 91.) He saw the officials post orange signs "all over the house" warning people not to enter. (*Id.* at 91, 94.)

{¶ 5} The next witness at trial was Sherry Coleman, a city housing inspector. (*Id.* at 107.) Coleman met her supervisor at the scene while firefighters were still present and proceeded to inspect and photograph the house. (*Id.* at 108-110.) She saw "severe" damage, including fire damage, part of the roof missing, and windows out. (*Id.* at 110-111.) Coleman testified that Fisk was present at the scene yelling at her and her supervisor to get off of his property. (*Id.* at 111.) For safety reasons, Coleman and her supervisor considered the house to be a nuisance based on the fire damage, the hole in the roof, and the considerable amount of water inside. (*Id.* at 117.) As a result, they placed bright orange warning signs on the front and rear of the house. (*Id.* at 112-114, 116.) The signs declared the property a public nuisance and included large type warning that presence on the premises was prohibited without written consent from the Dayton Housing Inspection Division. (State's Exhibits 1-5.) The signs included an address and phone number for the Housing Inspection Division and warned that violators would be prosecuted for a third-degree misdemeanor. (*Id.*)

{¶ 6} Coleman proceeded to describe the process for obtaining permission to enter the property. She testified that a person with proper identification could come to the city's

housing inspection office and obtain an authorization to enter free of charge during normal business hours. (*Id.* at 119.) According to Coleman, the authorization can be obtained instantly, and it allows a person to enter a nuisance property to repair it, to retrieve items, or to do whatever else needs done. (*Id.* at 120, 218.) Coleman testified that no such written authorization was given to Fisk. (*Id.* at 122.)

{¶ 7} On cross examination, Coleman testified that after a house is designated with signs as being a nuisance, a legal order so indicating typically is sent to the property owner. (*Id.* at 127.) According to Coleman, the order never is sent the same day signs are posted and, in any event, Fisk was not the legal owner of the property at issue. (*Id.* at 123, 127.)

{¶ 8} The final prosecution witness was Dayton police officer Brandon Cartee. He testified that he was dispatched to 31 North McGee Street on the afternoon of April 10, 2017 to investigate a report that someone was inside the house. (*Id.* at 131.) When he pulled up, he saw Fisk and two other people inside the house "with signs on the house posting that no one should be inside." (*Id.* at 131-132.) Fisk complied with Cartee's direction to come out the front of the house, but the other two people fled out the back door and got away. (*Id.* at 133.) It appeared to Cartee as if Fisk and his companions had been gathering items and taking them out of the house. (*Id.*) Fisk professed to be unaware that he could not go inside the house despite the fact that the orange signs still were posted on or near the exterior doors. (*Id.* at 134, 136.) Cartee proceeded to explain what the signs meant and told Fisk that he could not go inside the house without written consent from the city. (*Id.* at 134.) Fisk responded by challenging the officer's authority to keep him out of the house and by continuing to try to go back inside. (*Id.* at 135.) After Cartee

gave Fisk another warning, Fisk went back inside the house through the back door. (*Id.*) At that point, Cartee arrested Fisk and took him to jail. (*Id.* at 137-138.)

{¶ 9} Following Cartee's testimony, the State rested its case. Defense counsel made a Crim.R. 29 motion, which the trial court overruled. (*Id.* at 151-154.) Fisk then testified in his own defense. He claimed he was the owner of the house at 31 North McGee Street by virtue of a land-contract. (*Id.* at 156-157.)  He also identified an exhibit that he claimed was a copy of the notarized land contract between himself and the out-of-state seller. (*Id.* at 158.) The document was notarized on August 17, 2016. (*Id.*) Fisk acknowledged that the copy of the "contract" he presented at trial was not signed by the seller. (*Id.* at 159.) He first claimed that he "assumed" a signed copy was destroyed in the fire. (*Id.* at 159-160.) On cross examination, he admitted being unsure whether the seller ever had sent him a signed contract. (*Id.* at 169.) He also admitted that neither he nor the seller ever had the contract filed with the county recorder's office. (*Id.*) Finally, he acknowledged that the property referenced in the document was 33 North McGee Street rather than 31 North McGee Street. (*Id.* at 168.) Fisk explained, however, that he was buying 31 North McGee Street, 33 North McGee Street, and 27 North McGee Street on land contract from the same seller. (*Id.* at 156, 168.)

{¶ 10} With regard to the incident in question, Fisk acknowledged that he installed a new generator in the basement of his house and got it running the night before the fire. (*Id.* at 160.)  He claimed the generator was safe to use indoors, but he did not read the instructions. (*Id.*) He used the generator for electricity and caught and filtered his own water because he did not "rely on anyone to do anything" for him. (*Id.* at 161.) Fisk testified that after the fire department put out the fire and left, he began removing his belongings

from the house. (*Id.* at 163.) When police arrived, he explained to them that he was just trying to secure his property. (*Id.* at 165.) On cross examination, he explained that he and two friends were using the rear door to enter and exit the house after the fire. (*Id.* at 177.) Although the record contains pictures of conspicuous, bright orange signs on the house, including one on the door, Fisk claimed the signs were not there when he entered the house. (*Id.* at 177.) He testified that he had "no idea" when the signs were placed there. (*Id.* at 177-178.) Fisk admitted that the signs were present when he spoke to the police officer, but he claimed not to have seen them previously. (*Id.* at 179.) He testified that he never read the signs, but he admitted going in and out of the house just before the officers arrived. (*Id.* at 182-183.)

{¶ 11} Following Fisk's testimony, defense counsel rested. Defense counsel then brought up a prior request for a jury instruction on the affirmative defense of "necessity." (*Id.* at 184.) After discussing the issue with counsel, the trial court concluded that the evidence did not support the instruction and denied the request. (*Id.* at 184-191.) The jury subsequently retired to deliberate at 4:47 p.m. and reconvened at 5:15 p.m. with a guilty verdict on one count of unauthorized entry upon a nuisance premises in violation of Dayton City Ordinance 152.12.1. The trial court imposed a 60-day jail sentence with 50 days suspended and credit for ten days served. (January 16, 2018 Transcript at 5.) It also imposed a $50 fine plus court costs. (*Id.*) The trial court stayed execution of the sentence pending appeal. (Doc. # 94.)

{¶ 12} In his first assignment of error, Fisk contends the trial court erred in overruling his Crim.R. 29 motion at the close of the State's case. His assignment of error asserts that the State's evidence was legally insufficient because housing inspector

Coleman "failed to follow proper protocol" by not issuing a "legal order" after posting signs on the property. His entire substantive argument is as follows:

The State's second witness, housing inspector Sherry Coleman, stated that a report was made detailing why placards were placed on 13 [sic] North McGee Street. (Tr.126). From this report, a "legal order" is issued by the City of Dayton housing inspector upon a property being placarded as a nuisance property (Tr. 127), but that legal order is not issued on the date of placarding (Tr. 127, 129).

Coleman admitted that Fisk informed her that he was the owner of the property, and that this was not the first time that she had encountered Fisk on that property (Tr. 111, 118). Additionally, Coleman admitted that he did not give Fisk instructions on how to obtain written authorization to be on the property. (Tr. 117-121).

Having been informed by Fisk that he was the property owner, Coleman should have instructed him on the procedure for obtaining permission to be on the property, and * * * she should have supplied him with a legal order. Coleman did not follow proper protocol, and the trial court should not have rejected Defendant-Appellant's argument and overruled on this point.

(Appellant's brief at 3.)

**{¶ 13}** Upon review, we see no error in the trial court's denial of Fisk's Crim.R. 29 motion.[1] His arguments about the lack of a "legal order" and Coleman's failure to tell him

---

[1] The State contends Fisk failed to preserve his challenge to the legal sufficiency of the

how to get permission to enter the house have no bearing on the legal sufficiency of the evidence to sustain his conviction. Fisk was charged with violating Dayton City Ordinance 152.12.1, which provides in relevant part:

> (A) No owner or other person shall enter or be present in or on any building or premises that has been posted with a notice identifying the said building or premises to be a public nuisance, without first obtaining authorization in writing from the Superintendent of Neighborhood Development and having such written authorization on his/her person at the time.

> (B) It shall be an affirmative defense to a violation of this section that the person was the owner, or was authorized by the owner to be present on the said premises, and that one of the persons present had the required written authorization on his/her person at the time.

> * * *

> (D) Written authorization, as provided in this section, shall be issued by the Superintendent of Neighborhood Development to any person who provides documentation which, on its face, indicates that such person is either an owner of the premises or is authorized by the owner to be present, or to any person who makes application and pays for any permit to do work on the premises.

---

evidence because he did not renew his Crim.R. 29 motion after all evidence was presented. While the State's argument is technically correct, this court has recognized that it normally constitutes plain error for a defendant to be convicted based on legally insufficient evidence. *State v. Travlus*, 2d Dist. Montgomery No. 23666, 2010 WL 3366195, *4 (Aug. 27, 2010). Therefore, we will consider Fisk's argument.

{¶ 14} Section (A) of the ordinance prohibited Fisk from entering the house at 31 North McGee Street because it had been posted with notices identifying it as a public nuisance and Fisk had not obtained written permission to enter the building. Even assuming, purely arguendo, that Fisk was entitled to receive the follow-up "legal order" issued to a property owner, Coleman explained that such an order never is issued the same day placards are placed on a property. Regardless, Ordinance 152.12.1 does not condition an owner's or occupant's compliance with its terms on prior receipt of a legal order. Nor does the ordinance obligate anyone from the city to orally advise an owner or occupant of the process for obtaining permission to enter the premises. Oral advice was unnecessary because the large orange signs placed on the property clearly stated that written permission from the Housing Inspection Division was required for someone to be on the premises, and the signs provided contact information for interested parties to obtain more information. Based on the prosecution's evidence and photographs in the record, Fisk's self-serving testimony that he did not see any signs defies credibility. Moreover, Officer Cartee testified that he explained the signs to Fisk and warned him not to enter, but Fisk went back inside anyway.

{¶ 15} In short, Ordinance 152.12.1 unambiguously prohibited Fisk from entering the house without written permission after the orange signs were posted. The record supports a finding that he entered the house after the signs were posted and that he did so without written permission. Therefore, we find legally sufficient evidence to sustain his conviction, and the trial court properly denied his Crim.R. 29 motion. The first assignment of error is overruled.

{¶ 16} In his second assignment of error, Fisk challenges the trial court's denial of

his request for a jury instruction on the affirmative defense of "necessity." Fisk argues that he acted out of necessity when he entered the house to remove his personal property and that the evidence supported the requested jury instruction.

{¶ 17} "A criminal defendant is entitled to an instruction on an affirmative defense if he has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable people concerning the existence of the issue." *State v. Lawson*, 2d Dist. Montgomery No. 22155, 2008-Ohio-1311, ¶ 17, citing *State v. Johnson*, 2d Dist. Montgomery No. 21459, 2007-Ohio-5662, ¶ 21. We review a trial court's refusal to give a requested instruction for an abuse of discretion. *State v. Burnett*, 2018-Ohio-109, 109 N.E.3d 61, ¶ 15 (2d Dist.).

{¶ 18} "In order to prove the defense of necessity, a defendant must establish: (1) a harm due to the pressure of a physical or natural force, rather than human force; (2) the harm sought to be avoided was greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believed at the moment that his act was necessary and was designed to avoid the greater harm; (4) the actor was without fault in bringing about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm." *Lawson* at ¶ 20, citing *State v. Price*, 2d Dist. Montgomery No. 21370, 2006-Ohio-3856, ¶ 11, *reversed on other grounds*, 118 Ohio St.3d 144, 2008-Ohio-1974, 886 N.E.2d 852, and *State v. Harkness*, 75 Ohio App.3d 7, 598 N.E.2d 836 (6th Dist.1991).

{¶ 19} The trial court found that Fisk satisfied the first requirement because there was harm due to the pressure of a physical or natural force, namely a fire. The trial court was unconvinced that Fisk had met the second requirement. It appears to have reasoned

that the harm sought to be avoided (loss of Fisk's personal property) was not greater than or equal to the harm sought to be prevented by keeping him out of the house (injury to himself). With regard to the third element, the trial court accepted that Fisk himself reasonably believed his actions were necessary. The trial court found the fourth requirement unsatisfied, however, based on its determination that he was at fault for using the fire-causing generator in the basement. The trial court also found the fifth requirement unmet because it concluded that he lived right next door and could have watched the house. (Trial Tr. at 190-191.)

{¶ 20} On appeal, Fisk contends the trial court's analysis of the second element is flawed because it relied on its own 30-year-old recollection of a shipwreck case from a law school text book. Fisk contends this was error because the trial court did not have the unidentified case in front of it and did not check to see whether the case remained good law. We disagree. Regardless of the trial court's failure to cite the case, or to cite-check it, Fisk makes no substantive argument addressing whether the harm sought to be avoided here was greater than or equal to the harm sought to be prevented by the Dayton ordinance under which he was convicted. Based on our review of the record, we conclude that harm from the potential loss of Fisk's personal property was not greater than or equal to the potential harm to hims if he went inside the house. Therefore, the trial court correctly found that the second requirement was not satisfied.

{¶ 21} With regard to the fourth requirement, Fisk contends he was not at fault for causing the fire because he installed the generator properly and had used similar generators numerous times. But because Fisk installed the fire-causing generator indoors and did not read the directions, we believe the trial court correctly concluded that a

reasonable juror would conclude that he was at fault in bringing about the situation. The trial court also correctly found that Fisk had another alternative to avoid further harm to his property. As the trial court noted, he could have kept an eye on the property because he lived right next door. Fisk also testified that he had two roommates who presumably could have helped him watch. He also could have obeyed the warning signs, called the Dayton Housing Inspection Division, and followed the procedure for obtaining prompt permission to enter the house.

{¶ 22} For the foregoing reasons, we conclude that the record lacks sufficient evidence to raise a question in the minds of reasonable jurors on the affirmative defense of "necessity." Therefore, the trial court did not abuse its discretion in declining to give the instruction. The second assignment of error is overruled.

{¶ 23} In his final assignment of error, Fisk claims the trial court should not have accepted the jury's verdict. He asserts that the jury returned its verdict too quickly and that the trial court should have directed the jury to "reconsider the case" and to deliberate longer.

{¶ 24} This assignment of error lacks merit. Defense counsel did not ask the trial court to have the jury deliberate longer or raise any objection to the verdict. Therefore, plain-error review applies. *State v. Brown*, 2d Dist. Champaign No. 2015-CA-21, 2016-Ohio-4573, ¶ 8. It is well settled that a jury need not deliberate for any particular length of time. Very brief deliberation may be sufficient in a particular case. *Id.* at ¶ 9 (citing cases). Here the jury deliberated 28 minutes before returning with a verdict. Although this was a relatively short time, the trial itself was not long, the State's evidence was straightforward, and the issue before the jury was uncomplicated. Because the trial court declined to give

a "necessity" instruction, the only real issue was whether the property at issue had been posted with the orange warning signs prohibiting entry when Fisk admittedly entered the house. Fisk claimed he never saw the signs and suggested that they were not present when he entered the house. The State presented evidence that the signs were posted by housing officials while the fire department was present and Fisk was at the scene. The State also presented evidence that Fisk re-entered the house after a police officer showed him the signs and explicitly warned him not to go inside. The jury's verdict reflects that it found the State's evidence more persuasive. It reasonably could have made this determination quickly. We see no plain error in the trial court's acceptance of the jury's verdict. The third assignment of error is overruled.

{¶ 25} The judgment of the Dayton Municipal Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Lindsay E. Bozanich
V. Gayle Miller
Hon. Mia Wortham Spells